DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | CASE NO. 1:07 CR 228 |
| Respondent-Plaintiff, ) | 1:08 CV 31 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| Ramini Sri Pilla, ) | |
| ) | |
| Petitioner-Defendant. ) | |

Before the Court is petitioner-defendant's (hereinafter "Pilla" or "defendant") motion pursuant to 28 U.S.C. § 2255 to correct/vacate her sentence (Document 33). Pilla asserts in her motion that evidence obtained after sentencing shows the economic losses claimed by Case Western Reserve University ("CWRU") resulting from her criminal conduct were "extremely inaccurate" and "greatly enhanced." Pilla contends that this false information resulted in a higher sentence and restitution obligation than should have been imposed.[1] Defendant justifies attacking her sentence through § 2255 because "[s]ome of the evidence . . . is not contained in the record before the District Court and, therefore, a direct appeal would have been fruitless." Document 33, p. 3.

Newly retained counsel for defendant filed the § 2255 motion on January 4, 2008.

---

[1] "[A] correct presentation of losses suffered by CWRU will result in a much lower guideline level being assigned to the Petitioner and will, in all likelihood, result in the Petitioner being granted probation and a significantly lower restitution obligation." Document 33, p. 7.

The defendant also moved the Court to stay the execution of her sentence (Document 34). Defendant was scheduled to self-surrender on January 7, 2008, but the Court ordered a stay of the execution of her sentence, which is still in effect (Document 35).

The government has moved to dismiss Pilla's § 2255 motion on the grounds that: 1) defendant did not challenge her sentence on direct appeal, and therefore waived her right to do so under § 2255, and 2) § 2255 cannot be used to attack her restitution obligation because relief from the imposition of a fine or restitution does not meet the "in custody" requirement of § 2255 (Document 38). Defendant opposed the government's motion to dismiss (Document 41).

The government's motion to dismiss is granted for the reasons that follow.

## I. BACKGROUND

A.  Factual Background

Defendant was a faculty member at CWRU in Cleveland, Ohio. She was charged in a one count information for making false and fraudulent statements to the FBI in violation of 18 U.S.C. § 1001. The defendant entered a guilty plea to a single count (Document 20).

The scenario behind defendant's false statements occurred between August 2006 and February 2007. During that time, Pilla claimed to receive four threatening notes in her office at CWRU that were related to her employment at CWRU and motivated by her race and gender.

Defendant's plea was limited to the fourth note. However, the government argued that the placement of the first three notes constituted relevant conduct for purposes of sentencing. Document 20, p. 5.

A pre-sentence report was prepared at the Court's request. Both the defendant and government filed sentencing memoranda (Documents 22 and 24, respectively).

B.  <u>Pre-sentencing Information and Arguments Regarding CWRU's Losses</u>

Defendant's § 2255 motion challenges her sentence based on the amount of CWRU's economic loss. Therefore, this discussion focuses on that aspect of her sentencing. The parties agree that the base offense level is 6. Both the government and the pre-sentence report recommended a 2 level reduction for acceptance of responsibility, which the Court adopted at the sentencing hearing.

The government's sentencing memorandum and the pre-sentence report recommended sentencing Dr. Pilla at offense level 12 (Zone B)[2] and confinement. Defendant's sentencing memorandum recommended sentencing Dr. Pilla at offense level 8 (Zone A)[3] and requested probation. The 4 level difference between the two recommendations resulted from different views regarding the extent of CWRU's economic losses.

The government argued in its sentencing memorandum that the Court should accept the loss calculation in the pre-sentence report, which included losses for the time period involving all four notes, because: a) Pilla admitted a loss of approximately $80,000 when she pled guilty; b) CWRU was a victim of Pilla's crime; and c) losses incurred in connection with the three notes to which Pilla did not plead guilty are appropriately considered to be relevant conduct for

---

[2] (Base offense level of 6) - (2 offense levels for acceptance of responsibility) + (specific offense characteristic increase of 8 levels) = 12. (Document 24, p. 1).

[3] (Base offense level of 6) - (2 offense levels for acceptance of responsibility) + (specific offense characteristic increase of 4 levels) = 8. (Document 22, p. 3).

3

purposes of enhancement. Document 24, pp. 3-9. This calculation placed the total loss and specific offense characteristic over $70,000, which increased the base offense level by 8.[4]

The defendant argued that CWRU's losses were much less than the figure contained in the pre-sentence report, and that the total loss and specific offense characteristic was less than $30,000, which increased the base offense level by only 4.[5] Pilla challenged CWRU's economic loss figure of more than $70,000 in both her sentencing memorandum and objections to the pre-sentence report. Defendant argued that CWRU's loss figures were false and inflated, and that the loss calculation should only include the time period involving the fourth note to which she pled guilty.

In her sentencing memorandum, defendant challenged CWRU's claimed economic loss based on information provided by the government, and argued that the loss calculation should actually be less than $30,000:[6]

> "Based upon a review of information provided to defense counsel by the government, Dr. Pilla believes that an appropriate estimate of the total loss caused by the crime to which Dr. Pilla entered her guilty plea exceeds $10,000, but is less than $30,000. If the Court were to so conclude, Dr. Pilla would be at an offense level 10 (Base Offense Level of 6 plus Specific Offense Characteristics of 4) before acceptance of responsibility is considered. If the Court finds that Dr. Pilla has accepted responsibility, she would wind up with a final Offense Level of 8, which is in Zone A of the Sentencing Table. Dr. Pilla would ask that she be placed on probation."

Document 22, p. 3.

---

[4] 2007 United States Sentencing Commission Guidelines Manual, § 2B1.1 (b)(1)(E).

[5] 2007 United States Sentencing Commission Guidelines Manual, § 2B1.1 (b)(1)(C).

[6] A loss figure of greater than $10,000 but less than $30,000 results in a 4 level increase. 2007 United States Sentencing Commission Guidelines Manual, § 2B1.1 (b)(1)(C).

Defendant also filed an objection to the statement of CWRU's financial loss in the pre-sentence investigation report, and accused CWRU of falsifying its loss figure to increase defendant's offense level. Defendant's retained counsel, Attorney Steven Bell, objected as follows:

> "[CWRU] has apparently advised the Probation Department that its loss is $74, 975. Counsel for Dr. Pilla has seen no recent documentation from CWRU substantiating its claimed losses. However, Dr. Pilla's counsel was provided earlier this year with a document by which CWRU claimed a loss of $33, 295. . . .
> The fact that CWRU's claimed losses have more than doubled . . . is troubling. The Court is required to make a 'reasonable estimation' of loss, which means doing more than accepting information at face value. . . . There is a highly adversarial relationship between Dr. Pilla and CWRU. CWRU is a sophisticated institution with a law school and an Office of General Counsel. It would not be the first time someone tailored a claimed loss number to a sentencing table found in the Guidelines in an effort to influence a criminal sentence. Dr. Pilla asks the Probation Department to carefully scrutinize any and all information provided by CWRU.
> As noted below, it is important to know the date on which the services were rendered in order to know whether those services may be used in calculating CWRU's loss. Given the critical nature of those dates, Dr. Pilla respectfully suggests that any claimed loss without a reasonable estimation of its date be disregarded. . . .
> Dr. Pilla objects to the consideration of the monies allegedly expended by [CWRU] before January 23, 2007 in the calculation of "loss" contained in paragraph 56 of the PSI. . . ."

C.  <u>Sentencing Hearing</u>

The Court conducted a lengthy sentencing hearing on November 16, 2007 (Document 26). Defendant was represented by retained counsel, Attorney Steven Bell. At the sentencing hearing, the government presented extensive evidence regarding CWRU's financial loss as a result of defendant's conduct.

The government's evidence included testimony by Cyrus Taylor, Dean of the College of Arts and Sciences at CWRU, Jill Korbin, Associate Dean and Professor of Anthropology at CWRU, and Colleen Treml, Deputy General Counsel at CWRU, and a victim statement by

5

Cyrus Taylor. Defendant's counsel vigorously cross-examined the witnesses and challenged both CWRU's witnesses and the government's position that the loss occasioned by defendant's conduct exceeded $70,000. In addition, the Court questioned the witnesses from CWRU regarding their loss calculations.

At the conclusion of the sentencing hearing, the defendant asked the Court to reject the government's economic loss calculation of more than $70,000, and for a sentence of probation with a condition of home detention within offense level 10.

> MR. BELL: And I therefore think that the appropriate hourly rate to be assigned to their work is to take their salary and to divide by 2,000 or 2,080, the standard yearly work hours that someone expends, and derive an hourly rate and to use that hourly rate. . . . . . . . . I apologize that I don't have a calculator and I can't add these up precisely. But if we assume the full value of the FBI, $5,830; the full value of the Cuyahoga County Court of Common Pleas, $235.08; the full $4,445 from Porter, Wright; the full $7,325 for the Case Western Reserve Police; and then use the hourly rates that would be generated by the testimony that the court has heard here this afternoon, the loss number comes out to be somewhere between 60 and $65,000.
> . . . . . . . . . . . . . . . . . . . . .
> Your honor, we are going to ask the Court at the appropriate time to impose a sentence of probation with a condition of home detention within level 10."

Document 29, pp. 50 and 56.

Prior to the sentencing hearing, both in her objections to the pre-sentence report and sentencing memorandum, defendant argued that documentation provided by the government and CWRU evidenced a drastically lower economic loss than was stated in the pre-sentence report and government sentencing memorandum.[7] However, Defendant did not offer any evidence at

---

[7] As quoted above, defendant argued before sentencing that the economic loss was less that $30,000 and she should be sentenced at offense level 8.

the sentencing hearing regarding CWRU's economic loss[8] or argue at the hearing that the loss should be less than $30,000.

After considering all the sentencing information and evidence, the Court rejected the government's position that CWRU's economic loss and the total economic loss exceeded $70,000. Rather, the Court significantly reduced the amount of CWRU's claimed economic loss and reduced the total loss calculation to $66,240.39. As a result, 6 levels[9] were added to the base offense level of 6, with an additional reduction of 2 levels for acceptance of responsibility, which resulted in a final offense level of 10.

At the conclusion of the sentencing hearing, defendant was sentenced to six months confinement followed by two years of supervised release, and ordered to pay restitution to CWRU in the amount of $60,175.00,[10] to the FBI in the amount of $5,830.31, and to the Cuyahoga County Court of Common Pleas in the amount of $235.08. In addition to the Court's comments at the sentencing hearing, the Court wrote a lengthy memorandum explaining how it arrived at Pilla's sentence (Document 27). Defendant did not appeal her sentence.

## II. GOVERNMENT'S MOTION TO DISMISS

The government argues that defendant's § 2255 motion should be dismissed because she did not challenge her sentence on direct appeal, and therefore waived her right to do so. The government also argues that relief from the Court's restitution order is not available under

---

[8] Document 29, p. 46.

[9] 2007 United States Sentencing Commission Guidelines Manual, § 2B1.1 (b)(1)(D).

[10] This sum includes the $4,445 which CWRU paid to local counsel. Defendant stipulated to this loss by CWRU. Document 29, pp. 34-35 and 85.

28 U.S.C. § 2255 because the plain language of the statute only provides a remedy for "[a] prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States."  Because relief from a fine or order of restitution does not meet the "in custody" requirement of the statue, § 2255 cannot be used to attack the restitution figure imposed by the Court.

The defendant concedes that "[c]hallenges to sentencing must normally be raised in a direct appeal or a procedural default occurs."  Document 41, p. 3.   However, Pilla argues that no procedural default has occurred because "some" of the evidence on which she now bases the challenge to her sentence was gathered after the sentencing hearing and was not contained in the record, "therefore, a direct appeal would have been fruitless."[11]  Even if a procedural default has occurred, defendant argues that collateral attack of her sentence through § 2255 is still available because of the Supreme Court's "actual innocence" exception.  Lastly, defendant argues that § 2255 may be used to challenge restitution since her motion attacks the entire "sentencing package" and not solely the restitution obligation.

### III.  LAW AND ANALYSIS

Relief is appropriate under § 2255 when a petitioner demonstrates "'the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or a jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005)(quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).  "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in

---

[11] Document 33, p. 3.

order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003)(citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)) . "'The [*United States v.*] *Frady* [456 U.S. 152 (1982)] cause and prejudice standard applies to a defendant who pleads guilty and first asserts a claim for relief in a collateral proceeding.'" *Id*. (quoting *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir. 1993)).[12]  In order to establish prejudice, defendant must show not merely the possibility of prejudice, but actual and substantial disadvantage.  *Ratliff* at 1025.

In capital cases where a procedural default has occurred, a defendant may still seek habeas relief under the narrow "innocence of the penalty" exception.[13]  *Ross v. Berghuis*, 417 F.3d 552, 557 (6th Cir. 2005)(citing *Sawyer v. Whitley*, 505 U.S. 333, 341 and 345 (1992)(death penalty)).  Whether and to what extent *Saywer's* "innocence of the penalty" exception applies to non-capital cases is a "difficult unanswered question."  *Id*. (citing *Dretke v. Haley*, 541 U.S. 386, 396 (2004)).

A. Cause and Prejudice

Pilla claims to have cause for not directly appealing her sentence because "some" of the evidence supporting the allegation in her § 2255 motion that CWRU's economic loss is false was obtained after sentencing, and therefore not part of the record on which to base an appeal.[14]  A

---

[12] The *Regalado* and *Ratliff* cases refer to the *Frady* "cause and prejudice" standard.  The standard as stated in *Frady* is "cause and actual prejudice."  *Frady* at 167-168.

[13] Defendant is not attacking, "either collaterally or otherwise, her plea and conviction." Document 33, p. 7.

[14]  "**Some** of the evidence concerning [erroneous information about CWRU's monetary
(continued...)

reasonable interpretation of this statement is that some of the evidence concerning erroneous information about CWRU's monetary damages is contained in the record.

In defendant's sentencing memorandum and objections to the pre-sentence report, she maintained that CWRU's claimed loss of more than $70,000 was false. As quoted above, Pilla argued prior to sentencing that documents and information provided by the government and/or CWRU showed that CWRU's claimed losses were inflated, and that actual losses were less than $30,000. Based on this information, defendant urged the Court in her sentencing memorandum to find the total loss caused by defendant's crime to be in the $10,000 to $30,000 range (which would result in a final offense level of 8), and to grant probation.

Defendant's claim in the § 2255 motion that her sentence was based on false information about CWRU's financial losses is not a new argument. It is an argument that she made prior to sentencing based on information provided by the government and CWRU. The Court finds that defendant has not shown cause for failing to appeal her sentence on that basis.

Even if the Court found that Pilla established cause for not appealing her sentence, defendant has not demonstrated prejudice. In order to establish prejudice, "a defendant must 'shoulder the burden of showing, not merely that the errors at trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage.'" *Ratliff* at 1025 (quoting *Frady* at 170 (emphasis in original)).

---

[14](...continued)
damages] is not contained in the record before the District Court and, therefore, a direct appeal would have been fruitless." Document 33, p. 3 (emphasis added). No affidavit or documents were attached to Pilla's § 2255 motion.

10

Defendant contends in her § 2255 motion that she has some new evidence "indicating" that CWRU's loss information was erroneous and that she is entitled to a much lower guideline level that would "in all likelihood" result in probation. Document 33, p. 7. A possibility of prejudice is insufficient to carry defendant's burden under the cause and prejudice standard.

Even assuming the Court were to find a reduced economic loss which resulted in a lower offense level that moved defendant from Zone B to Zone A,[15] probation is not required by the sentencing guidelines for Zone A offense levels. Defendant was sentenced at offense level 10, which places her in Zone B. The sentencing guidelines authorize probation in both Zone A and Zone B.[16] Probation was an option available to the Court for offense level 10 and the defendant requested probation.

However, the Court declined to impose probation. In this case, probation would not meet fully the statutory purposes of sentencing, including promoting respect for the law and providing just punishment for the offense. Instead, the Court sentenced the defendant to six months in custody. A sentence of six months in custody is also available to the Court within the sentencing guideline range for the lower offense levels in Zone A sought by defendant.

The sentence imposed by the Court at the defendant's present offense level are within the options available to the Court at all lower offense levels. Even if the defendant was sentenced at a lower offense level, the Court would not impose probation because the statutory purposes of

---

[15] Defendant contended in her pre-sentencing memorandum that Zone A was the correct placement of her offense. A reduction to the next lower specific offense characteristic would reduce her final offense level from 10 (Zone B) to 8 (Zone A).

[16] Probation in Zone B requires the imposition of conditions, such as home confinement.

sentencing would not be met. The Court finds that defendant cannot show prejudice if she is unable to proceed with her § 2255 motion.

Because defendant has not shown cause for failing to challenge her sentence on appeal and prejudice if unable to proceed with her § 2255 motion, the Court finds that a procedural default has occurred.

B.  Actual Innocence

Defendant argues that even if she has procedurally defaulted on her sentencing challenge, she is entitled to seek a remedy under § 2255 because of the "actual innocence" exception to procedural default. Pilla is not attacking her plea or conviction, but argues that she is entitled to the actual innocence exception as applied in the sentencing context and cites *Sawyer v. Whitley*, 505 U.S. 333 (1992), in support.[17]

The "innocence of the penalty" exception has not been extended to non-capital cases. *Dretke v. Haley*, 541 U.S. 386, 387 (2004). Therefore, this exception is not available to excuse defendant's procedural default. Even if it were, defendant is not "ineligible" for the sentence imposed for the same reasons that defendant cannot establish prejudice, *supra*.

---

[17] In *Sawyer*, the petitioner filed for a writ of habeas corpus in federal court after he was convicted of capital murder in state court. In applying the "actual innocence" exception to a procedural default in the sentencing context of this capital case, the United States Supreme Court affirmed the holding of the court of appeals that "petitioner had failed to show that he was actually innocent of the death penalty because . . . petitioner was ineligible for the death penalty." *Sawyer* at 338.

IV.  CONCLUSION

Defendant did not challenge her sentence on direct appeal and cannot establish cause and prejudice for failing to do so.  The "actual innocence" exception is not available to defendant to excuse her procedural default.  Accordingly, defendant has waived the right to challenge her sentence and may not do so now under 28 U.S.C. § 2255.

The Court will publish a separate judgment entry in Case No. 1:08 CV 31 dismissing the petitioner-defendant's action brought pursuant to 28 U.S.C. § 2255[18] and declining to issue a certificate of appealability.

The Court will publish a separate judgment entry in Case No. 1:07 CR 228 vacating its prior stay of the defendant's sentence and ordering the defendant to self surrender on Monday, March 10, 2008.

IT IS SO ORDERED.

| February 26, 2008 | *S/ David D. Dowd, Jr.* |
|---|---|
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |

---

[18] The Court has extensively discussed the record in this case for the purpose of deciding the government's motion to dismiss.  The defendant's § 2255 motion is terminated because the government's motion to dismiss has been granted, and not because of a determination on the merits.

13